**ASSOCIATION DES ÉLEVEURS DE CANARDS ET D'OIES DU QUÉBEC, a Canadian nonprofit corporation; HVFG LLC, a New York limited liability company; and Hot's Restaurant Group, Inc., a California corporation, Plaintiffs,**

v.

**Kamala D. HARRIS, in her official capacity as Attorney General of California; et al., Defendants.**

**Case No. 2:12–cv–5735–SVW–RZ.**

United States District Court, C.D. California.

Signed Jan. 7, 2015.

Michael A. Tenenbaum, The Tenenbaum Law Firm, Santa Monica, CA, for Plaintiffs.

Constance Lynn Lelouis, Stephanie F. Zook, Office of the Attorney General, Sacramento, CA, Peter H. Chang, Office of the Attorney General, San Francisco, CA, for Defendants.

ORDER DENYING DEFENDANT'S MOTION TO DISMISS [116] AND GRANTING PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AS TO PREEMPTION CLAIM [117] AND PARTIAL JUDGMENT AS TO PREEMPTION CLAIM

STEPHEN V. WILSON, District Judge.

## I. INTRODUCTION

This action for declaratory and injunctive relief touches upon a topic impacting

gourmands' stomaches and animal-rights activists' hearts: foie gras. Plaintiffs Association des Éleveurs de Canards et D'Oies du Québec (the "Canadian Farmers"), HVFG LLC ("Hudson Valley"), and Hot's Restaurant Group, Inc. ("Hot's")[1] argue that California's sales ban on liver from force-fed birds, Cal. Health & Safety Code § 25982, runs afoul of federal law and the Constitution. Plaintiffs assert, *inter alia*, that the Poultry Products Inspection Act ("PPIA"), 21 U.S.C. §§ 451–470, preempts § 25982. This issue boils down to one question: whether a sales ban on products containing a constituent that was produced in a particular manner is an "ingredient requirement" under the PPIA.

Presently before this Court are Defendant's motion to dismiss, (Dkt. 116), and Plaintiffs' motion for partial summary judgment as to their preemption claim, (Dkt. 118). For the reasons discussed below, this Court GRANTS Plaintiff's motion for partial summary judgment and DENIES Defendant's motion to dismiss.

## II. FACTS AND PROCEDURAL HISTORY

The Canadian Farmers and Hudson Valley produce foie gras—a delicacy made from fattened duck liver. (Second Amended Complaint ("SAC") ¶¶ 12–13.) Hot's operates a restaurant in California that formerly sold foie gras products. (SAC ¶ 14.) Plaintiffs' foie gras products are produced using *gavage*—a method of feeding a bird through a tube inserted in its esophagus. *See* (SAC ¶¶ 44, 80.)

California Health and Safety Code § 25982 was enacted as part of a statutory

1. Plaintiff Gauge Outfitters, Inc. voluntarily dismissed its claim on October 9, 2012. (Dkt. 89.)

scheme aimed at the practice of force feeding birds. Section 25981, which is not at issue in this case, prohibits force feeding a bird for the purpose of enlarging its liver. Cal. Health & Safety Code § 25981. Section 25982 reinforces this ban by prohibiting the sale in California of products that are "the result of force feeding a bird for the purpose of enlarging the bird's liver beyond normal size."[2] Cal. Health & Safety Code § 25982. Section 25980(b) defines "force feeding" as "a process that causes the bird to consume more food than a typical bird of the same species would consume voluntarily." Cal. Health & Safety Code § 25980. It states that "[f]orce feeding methods include, but are not limited to, delivering feed through a tube. or other device inserted into the bird's esophagus." (*Id.*)

Plaintiffs assert that § 25982 has caused them to lose millions of dollars worth of foie gras product sales in California. (SAC ¶¶ 86–88.) They further assert that the District Attorneys of Los Angeles, Santa Clara, and Monterey Counties threatened to prosecute Hudson Valley and at least two out-of-state distributors of Plaintiffs' foie gras products for violating § 25982 by selling foie gras products from outside California to California consumers. (SAC ¶ 89.)

Plaintiffs filed this lawsuit on July 2, 2012—the day after § 25982 became operative. (Dkt. 1.) On September 28, 2012, this Court denied Plaintiffs' motion for a preliminary injunction because Plaintiffs failed to show a likelihood of success on the merits of their vagueness or commerce clause challenges. (Dkt. 87: Order at 11–28.) The Court also rejected defendant Kamala Harris's ("Harris") contentions that the Eleventh Amendment barred Plaintiffs' suit and that the case was not ripe.

On appeal, the Ninth Circuit affirmed this Court's determination that Harris is not entitled to Eleventh Amendment immunity. *Association des Éleveurs de Canards et d'Oies du Québec v. Harris,* 729 F.3d 937, 943 (9th Cir.2013). The Ninth Circuit stated in dicta that instead of asserting Eleventh Amendment immunity, "a state official who contends that he or she will not enforce the law may challenge plaintiff's Article III standing based on an 'unripe controversy' "—an argument not then before that Court. *Id.* at 944. The Ninth Circuit also held that § 25982's scope was limited to liver products produced as a result of force feeding a bird for the purpose of enlarging its liver. *Id.* at 945–46. Finally, the Ninth Circuit affirmed this Court's holding that Plaintiffs failed to show a likelihood of success on the merits of their due process and commerce clause claims. *Id.* at 946–53.

On April 2, 2014, Plaintiffs filed their SAC. (Dkt. 112.) Plaintiffs' SAC asserts claims for: (1) declaratory relief regarding the application of § 25982 to imports of foie gras products where the commercial sale of such products takes place and title passes outside of the state of California; (2) declaratory relief that § 25982 is preempted by the PPIA; (3) declaratory relief that § 25982 violates the Commerce Clause because it is an extraterritorial regulation; and (4) declaratory relief that § 25982 violates the Commerce Clause because its substantial burden on interstate commerce exceeds its putative local benefits.[3] (Dkt. 112.)

---

**2.** Solely for concision's sake, the Court abbreviates the sales ban's scope as "force-fed bird livers." The use of this or similar abbrevia-

tions throughout this opinion is not meant as a construction of the statutory language.

**3.** Plaintiffs voluntarily dismissed their claims for declaratory relief regarding the applica-

## III. DISCUSSION

### A. JUSTICIABILITY

Defendant argues that the Court should dismiss Plaintiffs' case under Federal Rule of Civil Procedure 12(b)(1) because Plaintiffs lack Article III standing, because the case is not ripe, and because it fails to present a "case of actual controversy" as required by the Declaratory Judgment Act, 28 U.S.C. § 2201.[4]

### 1. Legal Standard Under Federal Rule of Civil Procedure 12(b)(1)

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges the Court's subject matter jurisdiction to hear the claims alleged. Fed.R.Civ.P. 12(b)(1). A Rule 12(b)(1) motion may be asserted either as a facial challenge to the complaint or a factual challenge. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.2004). In a facial challenge, the moving party asserts that the allegations contained in the complaint are insufficient on their face to invoke federal jurisdiction. *Id.; Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir.2003). When reviewing a facial challenge, the court is limited to the allegations in the complaint, the documents attached thereto, and judicially noticeable facts. *Gould Electronics, Inc. v. United States*, 220 F.3d 169, 176 (3rd Cir.2000). The court must accept the factual allegations as true and construe them in the light most favorable to the plaintiff. *Id.*

Regardless of the type of motion asserted under Rule 12(b)(1), the plaintiff always bears the burden of showing that federal jurisdiction is proper. *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 376–78, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994); *Valdez v. United States*, 837 F.Supp. 1065, 1067 (E.D.Cal. 1993), *aff'd* 56 F.3d 1177 (9th Cir.1995). "In effect, the court presumes *lack* of jurisdiction until plaintiff proves otherwise." Schwarzer, Tashima & Wagstaffe, California Practice Guide: Federal Civil Procedure Before Trial § 9:77.10 (Rutter Group 2011) (citing, *inter alia, Stock West, Inc. v. Confederated Tribes,* 873 F.2d 1221, 1225 (9th Cir.1989)) (emphasis in original). "The proponents of subject-matter jurisdiction bear the burden of establishing its existence by a preponderance of the evidence." *Remington Lodging & Hospitality, LLC v. Ahearn*, 749 F.Supp.2d 951, 955–956 (D.Alaska 2010) (citing *United States v. Alcan Elec. & Eng'g, Inc.*, 197 F.3d 1014, 1018 (9th Cir.1999)).

### 2. Legal Standard Under Article III

#### a. Standing

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 101, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983). In order to have standing to seek injunctive relief, the plaintiff must show "the reality of the threat of repeated injury," *id.* at 107 n. 8, 103 S.Ct. 1660, and a "real or immediate threat ... that he will again be wronged," *id.* at 111, 103 S.Ct. 1660. The plaintiff cannot rely on mere "conjecture" or "speculation" regarding a threat of injury. *Id.* at 108, 103 S.Ct. 1660.

To establish Article III standing:

First, the plaintiff must have suffered an injury in fact, the violation of a protect-

---

tion of § 25982 to foie gras products from ducks fed entirely outside of California and under the Due Process Clause. (Dkts. 123, 128.)

4. While Defendant frames her argument as one of "justiciability," Plaintiffs' opposition frames it as one of ripeness. The Court therefore addresses both ripeness and standing.

ed interest that is (a) concrete and particularized, and (b) actual or imminent. Second, the plaintiff must establish a causal connection between the injury and the defendant's conduct. Third, the plaintiff must show a likelihood that the injury will be redressed by a favorable decision.

*Mayfield v. United States*, 599 F.3d 964, 969 (9th Cir.2010) (internal quotations, citations, and alterations omitted).

### b. Ripeness

The standing inquiry also overlaps with the constitutional and prudential doctrine of ripeness. "[I]njunctive and declaratory judgment remedies are discretionary, and courts traditionally have been reluctant to apply them ... [except] in the context of a controversy 'ripe' for judicial resolution." *Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300, 118 S.Ct. 1257, 140 L.Ed.2d 406 (1998) (internal quotations omitted). In particular, the doctrine "requires us to evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Abbott Laboratories*, 387 U.S. at 149, 87 S.Ct. 1507.

### 3. Legal Standard Under the Declaratory Judgment Act

The Declaratory Judgment Act provides that a federal court may issue a declaratory judgment in "a case of actual controversy ... whether or not further relief is sought." 28 U.S.C. § 2201(a); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). "[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'controversies' that are justiciable under Article III." *MedImmune*, 549 U.S. at 126, 127 S.Ct. 764 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). The test is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127, 127 S.Ct. 764. An actual controversy must exist at all stages of review. *Preiser v. Newkirk*, 422 U.S. 395, 401, 95 S.Ct. 2330, 45 L.Ed.2d 272 (1975).

### 4. Application

■ The thrust of Defendant's argument is that the case is not justiciable because she has not personally threatened to prosecute Plaintiffs under § 25982. Instead, the only alleged threats of enforcement were made by county district attorneys—and Defendant claims that their actions cannot be attributed to her. In other words, Defendant argues that Plaintiffs' claims are not justiciable because they sued the wrong defendant.

The California Constitution obligates Defendant "to see that the laws of the State are uniformly and adequately enforced." Cal. Const. art. V, § 13. Nevertheless, Defendant's supervisory authority over local district attorneys is somewhat limited. *See id.;* Cal. Gov.Code § 12550. If the Attorney General believes that a district attorney is not adequately enforcing the law, she may step in and institute enforcement proceedings herself. Cal. Const. Art. V, § 13. She may also require district attorneys to make written reports and may take charge of an investigation or prosecution where necessary. Cal. Gov. Code § 12550. However, she does not have the ability to force a district attorney to act or to adopt a particular policy. *Goldstein v. City of Long Beach*, 715 F.3d

750, 756 (9th Cir.2013) *cert. denied sub nom. Cnty. of Los Angeles, Cal. v. Goldstein,* —— U.S. ——, 134 S.Ct. 906, 187 L.Ed.2d 778 (2014).

Nevertheless, the parties do not dispute that under certain circumstances Defendant has the ability to institute enforcement proceedings under § 25982. Moreover, aside from any enforcement authority conferred by the California Constitution, Defendant is at least empowered to enforce § 25982 by virtue of being a peace officer. (Dkt. 87: Order at 9.)

Defendant seeks to have her pate and eat it, too. Defendant asserts that she has no present intention to exercise her authority to enforce § 25982. She thus argues that Plaintiffs' claims are therefore not justiciable as to her. However, at the hearing held on July 14, 2014, she refused to stipulate that she would never bring enforcement proceedings under § 25982. Defendant cannot credibly claim that there is no cognizable risk of her prosecuting Plaintiffs for violating § 25982 while simultaneously reserving her right to enforce it.

As this Court previously found, Plaintiffs are in the same position as the trappers who challenged California's ban on certain animal traps and poisons in *National Audubon Society, Inc. v. Davis,* 307 F.3d 835 (9th Cir.2002). In *Davis,* the Ninth Circuit reversed the district court's holding that the trappers lacked standing because there was no "genuine threat of imminent prosecution." *Id.* at 855. The Ninth Circuit first found that the trappers did not need to show a genuine threat of imminent prosecution because their asserted injury was financial loss caused by ceasing certain animal trapping practices to avoid violating the challenged ban. *Id.* at 855–56. The Court next found that several factors indicated that this economic injury was caused by the enactment of the challenged proposition:

(1) the newness of the statute; (2) the explicit prohibition against trapping contained in the text of Proposition 4 [the challenged law]; (3) the state's unambiguous press release mandating the removal of all traps banned under Proposition 4; (4) the amendment of state regulations to incorporate the provisions of Proposition 4; and (5) the prosecution of one private trapper under Proposition 4.

*Id.* at 856. The Court also found that the trappers' injury was redressable because they would resume using the banned traps if the proposition was declared unenforceable. *Id.*

Plaintiffs assert that they have lost millions of dollars because they were forced to either cease sales of their foie gras products in California or face prosecution. As in *Davis,* "the gravamen of [Plaintiffs'] suit is economic injury rather than threatened prosecution." *Id.* at 856.

Also as in *Davis,* Plaintiffs' injury was caused by § 25982. The statute is relatively new—it only became effective in July 2012. It expressly prohibits the sale of liver products produced as a result of force feeding a bird for the purpose of enlarging its liver. Additionally, local district attorneys have threatened to prosecute Hudson Valley and other similar foie gras producers under § 25982. Even assuming *arguendo* that these threats are not attributable to Defendant, they illustrate the causal relationship between § 25982 becoming operative and Plaintiffs' economic injury from ceasing sales in California. Moreover, Defendant is both obligated to ensure that § 25982 is adequately enforced and authorized to enforce it herself. Defendant's recent refusal to stipulate that she won't enforce § 25982

reinforces the conclusion that a causal relationship exists.

Plaintiffs' injury is redressable. They assert that they sold their foie gras products in California before the sales ban and that they lost significant revenue as a result of stopping. Presumably they would resume their sales if § 25982 were declared unenforceable. Moreover, at the very least a declaratory judgment or injunction against Defendant would prevent her from using her own authority to enforce § 25982 against Plaintiffs. Plaintiffs' need for certainty that Defendant won't prosecute them for selling their foie gras products is understandable—particularly given Defendant's coy reservation of the right to enforce § 25982. Plaintiffs thus have standing to assert their claim.

■ Additionally, this is not a case where more facts surrounding enforcement will assist the Court. Plaintiffs "injury is established, and the legal arguments are as clear as they are likely to become." *Davis*, 307 F.3d at 857. In relevant part, Plaintiffs assert that the PPIA preempts § 25982. This is purely a question of statutory interpretation; its resolution would not vary based on the specific facts surrounding enforcement. The potential hardship to Plaintiffs also favors adjudication. They will continue to lose revenue by ceasing sales of their foie gras products in California unless and until the sales ban is declared invalid. Plaintiffs' claim against Defendant is thus ripe. *Id.*

■ For the same reasons, Plaintiffs satisfy the Declaratory Judgment Act's "case of actual controversy" requirement. *See Valley View Health Care, Inc. v. Chapman*, 992 F.Supp.2d 1016, 1042 (E.D.Cal. 2014) (finding declaratory relief appropri-

ate where a state enforcement agency and private entities disputed whether a state law was preempted).

For the aforementioned reasons, the Court finds that Plaintiffs' claims are justiciable. The Court therefore DENIES Defendant's motion to dismiss Plaintiffs' complaint under Rule 12(b)(1).[5]

## B.  PREEMPTION

Plaintiffs move for partial summary judgment on their claim that the PPIA preempts § 25982.

### 1.  Legal Standard for a Motion for Summary Judgment

Federal Rule of Civil Procedure 56 requires summary judgment for the moving party when the evidence, viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Tarin v. County of Los Angeles*, 123 F.3d 1259, 1263 (9th Cir.1997).

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). On an issue for which the moving party does not have the burden of proof at trial, the moving party may satisfy this burden by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has met its initial burden, the nonmoving party must affirmatively present admissible evidence and identify specific facts sufficient to show a genuine issue for trial. *See id.* at 323–24, 106 S.Ct. 2548; *Anderson v. Liber-*

---

5. As discussed below, the Court also denies Defendant's motion to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(6).

*ty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A scintilla of evidence or evidence that is not significantly probative does not present a genuine issue of material fact. *Addisu v. Fred Meyer,* 198 F.3d 1130, 1134 (9th Cir.2000).

### 2. Express Preemption

Under the Supremacy Clause of the Constitution, Congress has the power to preempt state law. *Valle del Sol Inc. v. Whiting,* 732 F.3d 1006, 1022 (9th Cir. 2013) *cert. denied sub nom. Arizona v. Valle Del Sol, Inc.,* —— U.S. ——, 134 S.Ct. 1876, 188 L.Ed.2d 911 (2014). Preemption may be express or implied. *See id.* Express preemption "arises when the text of a federal statute explicitly manifests Congress's intent to displace state law." *Id.* (quoting *United States v. Alabama,* 691 F.3d 1269, 1281 (11th Cir.2012)).

The PPIA regulates the distribution and sale of poultry and poultry products. *Nat'l Broiler Council v. Voss,* 44 F.3d 740, 743 (9th Cir.1994) (per curiam). This includes foie gras and other products made "wholly or in part from any [goose or duck] carcass or part thereof." *See* 21 U.S.C. §§ 453(e) & (f).

The PPIA expressly preempts states from imposing:

> [m]arking, labeling, packaging, or ingredient requirements (or storage or handling requirements … [that] unduly interfere with the free flow of poultry products in commerce) in addition to, or different than, those made under this chapter [the PPIA] with respect to articles prepared at any official establishment in accordance with the requirements under this chapter[.] [6]

21 U.S.C. § 467e. This clause sweeps broadly. *See Nat'l Meat Ass'n v. Harris,* —— U.S. ——, 132 S.Ct. 965, 970, 181 L.Ed.2d 950 (2012) (finding that the nearly identical preemption provision set forth in the Federal Meat Inspection Act ("FMIA") sweeps broadly). An "official establishment" is "any establishment as determined by the Secretary at which inspection of the slaughter of poultry, or the processing of poultry products, is maintained under the authority of this chapter." 21 U.S.C. § 453(p). Thus, the PPIA preempts § 25982 if a sales ban on poultry products resulting from force feeding a bird imposes an ingredient requirement that is in addition to or different than those imposed by the PPIA.

Plaintiffs' foie gras products are prepared at official establishments.[7] (Henley Decl. ¶¶ 3–4; Henley Decl., Exs. A & B; Cuchet Decl. ¶¶ 3–5; Cuchet Deck, Ex. A.) Defendant argues that § 25982 regulates a feeding process occurring before Plaintiffs' birds enter an official establishment. Defendant thus asserts that § 25982 does not

---

**6.** Another portion of that clause which is not at issue in this case preempts additional or different requirements "with respect to premises, facilities and operations of any official establishment[.]" 21 U.S.C. § 467e There is also a savings clause permitting states to impose recordkeeping requirements that are not inconsistent with the Act and to issue regulations "consistent with this chapter, with respect to any other matters [aside from those expressly preempted] regulated under this chapter." *Id.*

**7.** The Court rejects Defendant's assertion that Plaintiffs failed to submit sufficient evidence showing that their foie gras products are prepared at official establishments. Plaintiffs submitted testimony that their products are "prepared" at "official establishments" along with United States Department of Agriculture ("USDA") approval documents indicating an "establishment number" and describing the "processing procedures." (Henley Decl. ¶¶ 3–4; Henley Deck, Exs. A & B; Cuchet Decl. ¶¶ 3–5; Cuchet Deck, Ex. A.) Taken together, this evidence is sufficient to establish that Plaintiffs' foie gras products are prepared at official establishments.

apply with respect to an article produced at an official establishment. Defendant further argues that § 25982 regulates a process rather than an "ingredient" because it regulates the manner of producing the fattened bird livers rather than the use of a particular ingredient.

The Court recognizes that "[t]he line between regulating the sale of a finished product and establishing product standards will not always be easy to draw. Any finished product can be described in terms of its components or method of manufacture." *U.S. Smokeless Tobacco Mfg. Co. LLC v. City of New York*, 708 F.3d 428, 434–35 (2d Cir.2013). Nevertheless, here the line is clear: Section 25982 expressly regulates only the sale of products containing certain types of foie gras products—i.e. foie gras from force-fed birds.[8] Section 25982 does not ban the practice of force feeding; this practice is the subject of a separate provision.

Additionally, it does not matter whether foie gras obtained from force-fed birds is a different product from non-force-fed bird foie gras. It is undisputed that the PPIA and its implementing regulations do not impose any requirement that foie gras be made with liver from non-force-fed birds. Thus, Plaintiffs' foie gras products may comply with all federal requirements but still violate § 25982 because their products contain a particular constituent—force-fed bird's liver. Accordingly, § 25982 imposes an ingredient requirement in addition to or different than the federal laws and regula-

tions.[9] *See Nat'l Broiler Council*, 44 F.3d at 745 (finding that a California law imposed a labeling requirement in addition to the PPIA where "plaintiffs' members can label [certain specified] poultry products ... as 'fresh' and comply with all federal labeling requirements but not comply with the California Act"); *Armour & Company v. Ball*, 468 F.2d 76, 83–85 (6th Cir.1972) (holding that the FMIA's analogous preemption provision preempted Michigan's sales ban on Grade 1 sausage containing non-striated muscle meat because it imposed requirements in addition to or different than the federal requirements).

*a. National Meat Association v. Harris*

Defendant asserts that Plaintiffs' preemption argument is foreclosed by the Supreme Court's reasoning in *National Meat Association v. Harris*. In *National Meat* the Court considered whether the FMIA preempts California's statute regulating the treatment and sale of nonambulatory swine. In addressing that issue the Court applied only the first sentence of the preemption clause, which preempts requirements within the FMIA's scope "with respect to premises, facilities and operations of any establishment ... in addition to, or different than those made under this [Act]." *Nat'l Meat Ass'n*, 132 S.Ct. at 969 (quoting 21 U.S.C. § 678) (alterations in original). The California statute at issue barred: (1) selling or buying nonambulatory animals for human consumption; (2) producing meat for human consumption from nonambulatory animals; and (3) sell-

---

**8.** The Court assumes, but does not decide, that foie gras may be produced without force feeding birds to enlarge their livers. Nevertheless, the Court would find that § 25982 imposes an ingredient requirement regardless of whether foie gras can be produced without force feeding.

**9.** For similar reasons the Court need not address whether the USDA's definitions and

standards regarding foie gras products set forth in its Standards and Labeling Policy Book or Policy Memo 076 regarding foie gras product standards is admissible. Moreover, the fact that § 25982 is phrased as a prohibition rather than an affirmative requirement does not exclude it from the PPIA's preemptive sweep. *See Nat'l Broiler Council*, 44 F.3d at 745.

ing meat for human consumption from non-ambulatory animals. *Id.* at 970. It also imposed a host of other requirements regarding the treatment of nonambulatory animals. *Id.* The plaintiff was a trade association representing meatpackers and processors, including operators of swine slaughterhouses. *Id.*

The Court rejected the argument that the statute was not preempted because it applied only to animals that would not be turned into meat. *Id.* at 973. The Court found that the FMIA's scope included animals not destined to become meat for human consumption. *Id.* The Court distinguished cases holding that the FMIA does not preempt bans on slaughtering horses for human consumption, stating that those cases applied "at a [distance] from the sites and activities that the FMIA most directly governs." *Id.* at 974. According to the Court, unlike the California statute before it, the horse-butchering bans prevented horses from ever being delivered to, inspected at, or handled by a slaughterhouse. *Id.*

Additionally, the Court considered whether the sales ban on meat from nonambulatory animals avoided preemption because it applied only after the slaughterhouse's activities concluded. The Court rejected this argument, relying on a functional interpretation of the sales ban as it functioned within the statute as a whole. *Id.* at 972–73. The Court found that the sales ban helped to implement and enforce the statute's other requirements directly regulating activities on Slaughterhouse's premises by ensuring that slaughterhouses remove nonambulatory swine from their production process. *Id.* at 972. The Court thus stated that the sales ban "functions as a command to slaughterhouses to structure their operations in the exact way the remainder of [the California statute] mandates." *Id.* at 973. Based on this functional interpretation, the Court found that the sales ban was preempted as an additional or different requirement with respect to the premises, facilities, or operation of an FMIA-covered establishment. *Id.* According to the Court, if the sales ban weren't preempted "then any State could impose any regulation on slaughterhouses just by framing it as a ban on the sale of meat produced in whatever way the State disapproved. That would make a mockery of the FMIA's preemption provision."

*National Meat's* application to this case is far from clear. On its face, the California ban on sales of meat from nonambulatory pigs appears analogous to California's ban on sales of foie gras from force-fed birds. Additionally, the need to prevent states from avoiding preemption via strategic legislative drafting applies with equal force to § 25982. Thus, if the nonambulatory pig sales ban is preempted by the FMIA then § 25982 should also be preempted by the analogous PPIA.

However, the Court's functional approach to statutory construction suggests that § 25982 should be understood as a ban on force-feeding birds rather than as a sales ban. Under this reading, Defendant might be correct that § 25982 does not impose an ingredient requirement because it regulates a process. If so, then § 25982 would not be preempted.

However, this result would turn the Supreme Court's reasoning on its head: Instead of hindering crafty draftsmanship, this analysis would use a functional approach to enable states to creatively avoid preemption. Under this analysis, any state would be able to avoid preemption of ingredient and labeling requirements by purporting to regulate the process of producing an ingredient rather than directly regulating the ingredient's use.

As this discussion illustrates, there is a critical distinction between *National Meat*

and the case at bar: *National Meat* considered a different portion of the preemption clause than the one here at issue.[10] Much of the Court's analysis relied on the fact that the statute expressly preempts regulations with respect to "premises, facilities and operations" of covered establishments. It did not consider the portion of the FMIA's preemption clause applicable to ingredient and labeling requirements. Thus, much of the Court's analysis does not apply to the case at bar.

In particular, the distinction that the Court drew between the California nonambulatory animal statute and a horse-slaughtering ban is not helpful in the context of Plaintiffs' case. It may be true that, like a horse-slaughtering ban, § 25982 regulates only activities that occur apart from official establishments' operations. However, this fact is irrelevant to the question of whether § 25982 imposes an additional or different ingredient requirement. In contrast to the operations and premises clause, the clause dealing with ingredient and labeling requirements inherently contemplates preempting regulations applicable outside of the operations and facilities of official establishments. By stating that it applies "with respect to articles prepared at any official establishment," 21 U.S.C. § 467e, the statute makes clear that it applies beyond the activities actually conducted by or at an official establishment.

Additionally, unlike in *National Meat*, § 25982's sales ban appears in a separate statute from the ban on the act of force feeding birds. While this division would

be unimportant if it were purely formalistic, Plaintiffs' case illustrates that the divide is functional. Plaintiffs only assert that the sales ban applies to their foie gras products. They do not challenge the conduct ban, nor do they argue that the conduct ban applies to their force-feeding of birds outside of California. In contrast, the plaintiff in *National Meat* challenged both the conduct and sales bans, and was apparently impacted by both.[11] Thus, unlike in *National Meat*, it makes little sense here to consider § 25982 alongside § 25981 and thus to interpret § 25982 as the functional equivalent of § 25981's conduct ban.

Given this ambiguity regarding whether or how *National Meat* applies to Plaintiffs' case, the Court concludes that the best approach is to apply *National Meat's* reasoning to reach a result consistent with the goals that the Supreme Court embraced. The Court therefore concludes that *National Meat* requires the Court, in deciding Plaintiffs' express preemption claim, to prevent California from circumventing the PPIA's preemption clause (or as *National Meat* said, from "mak[ing] a mockery" of it) through creative drafting. Thus, California cannot regulate foie gras products' ingredients by creatively phrasing its law in terms of the manner in which those ingredients were produced.

For the aforementioned reasons, the Court finds that the PPIA expressly preempts § 25982. The Court therefore GRANTS Plaintiffs' motion for partial

---

**10.** Both the FMIA and PPIA contain preemption clauses with a section applicable to operations and another applicable to ingredients and labeling. *See* 21 U.S.C. § 467e; 21 U.S.C. § 678.

**11.** *See Nat'l Meat Ass'n v. Brown*, 599 F.3d 1093, 1096–97 (9th Cir.2010) *rev'd sub nom.*

*Nat'l Meat Ass'n v. Harris*, —— U.S. ——, 132 S.Ct. 965, 181 L.Ed.2d 950 (2012) (stating that some of the plaintiff organization's members claimed the statute "would prevent the slaughter of approximately 2.5% of their pigs").

summary judgment.[12]

## IV. ORDER

1. For the aforementioned reasons, the Court GRANTS Plaintiffs' motion for partial summary and ENTERS JUDGMENT in favor of Plaintiffs on their third cause of action concerning preemption. The Court therefore PERMANENTLY ENJOINS AND RESTRAINS Defendant and her agents, servants, employees, representatives, successors, and assigns from enforcing California Health and Safety Code § 25982 against Plaintiffs' USDA-approved poultry products containing foie gras.

2. For the aforementioned reasons, the Court DENIES Defendant's motion to dismiss.

**IT IS SO ORDERED.**

12. In light of this holding, the Court need not reach any of the other arguments raised in the parties' motions.